IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Vanessa L. Wild, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 07-G-2008-S |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Vanessa L. Wild, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable

by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Jerome L. Munford, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff was able to perform her past relevant work, and accordingly found her not disabled.

## DISCUSSION

In the present case the plaintiff alleges she is disabled due to psychological problems, including depression, panic attacks and mood swings that prevent her from working. At the request of the Commissioner the plaintiff was seen by Dr. John Neville, Ph. D., who diagnosed Major Depressive Disorder, Recurrent, Moderate. Record 118. Dr. Neville commented about the plaintiff's ability to work and manage her affairs:

> She is cognitively able to function independently, but <u>does not appear emotionally stable enough to function independently at present</u>. Mrs. Wild is able to understand instructions. Short-term memory was adequate. Her ability to carry out instructions is moderately to severely impaired by her mood disorder. Mrs. Wild's ability to interact with coworkers appropriately is moderately to severely impaired. <u>Her ability to cope with ordinary work pressures appears severely impaired.</u>

Record 118 (emphasis added).

The plaintiff also underwent a psychological evaluation at the request of her attorney. That evaluation was done by Dr. Jeffrey J. Dolce, Ph. D. Dr. Dolce diagnosed Type II Bipolar Affective Disorder, with the need to rule out

4

Schizoaffective Disorder; Post Traumatic Stress Disorder; and Polysubstance Dependence, in early remission.[1]  Record 214.  Dr. Dolce assessed a GAF score of 40.[2]  Dr. Dolce made the following observation:

> Furthermore <u>I feel at present she is not stable enough to be capable of sustaining employment</u>.  Her addiction recovery is very new and maintenance of this is somewhat questionable.  In addition, her psychiatric symptoms are not well controlled currently by her medications.  <u>I therefore do not see her as capable of maintaining employment at this time</u>, or likely in the next 12 months.

Record 213 (emphasis added).

The state agency reviewing psychiatrist, Dr. Nuckels, in his functional capacity assessment opined the plaintiff would require casual contact with the public and co-workers.  Record 121.  He also opined the plaintiff "[m]ay miss one to two day[s] per week due to psychological symptoms."  Record 121.

---

[1] The ALJ found that the plaintiff's past history of substance abuse was now resolved and did not cause more than minimal functional limitations.  Record 20-21.

[2] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning.  Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR").  A rating of 31-40 reflects: "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."  DSM-IV-TR at 34 (emphasis in original).

The plaintiff's treating psychiatrist, Dr.Siddiqui, wrote a letter to the plaintiff's attorney which stated the plaintiff had been diagnosed with "Generalized Anxiety disorder, Panic disorder without agrophobia [sic], Depressive disorder with psychotic features and Borderline personality disorder." Record 152. Dr. Siddiqui also stated "Ms. Wild has done fairly well on her medications." Record 152.

In spite of this extensive record documenting severe mental illness, the ALJ found that the plaintiff's mental impairments would "impose no greater than mild to moderate functional limitations on her ability to engage in basic work activities...." Record 22. A careful review of the ALJ's decision shows that he ignored the extensive evidence showing the plaintiff had more than a moderate impairment due to her mental illness. He did not address Dr. Nuckels' observation that the plaintiff might miss one to two days per week because of her psychological symptoms.[3] Nor did the ALJ address the opinion of Dr. Dolce that plaintiff was not capable of maintaining employment. While the ALJ mentioned Dr. Neville's opinion that the plaintiff's ability to cope with ordinary work pressures would be severely impaired, he gave no reason for not accepting this

---

[3] The Commissioner's argument in brief that Dr. Nuckel's notation "does not indicate a firm opinion on this issue" is laughable. Such a notation clearly shows the state agency reviewer believed plaintiff's mental condition might cause excessive absences.

opinion from his own consulting examiner.  It is also noteworthy that he did not ask the vocational expert whether a person with such a restriction would be able to work.  Nonetheless, the vocational expert testified that if the plaintiff were limited to only occasionally having contact with coworkers, there would be no jobs she could perform.  Record 315.

The ALJ twisted Dr. Siddiqui's statement that the plaintiff "has done fairly well on her medications" rather than properly considering its merits.  The ALJ wrote: "Dr. Siddiqui, another psychiatrist, has indicated that the claimant functions appropriately on her medications."  Record 22.  Doing "fairly well" on medications is not the same as functioning appropriately.  The Commissioner in brief argues that Dr. Siddiqui's statement was in effect an opinion the plaintiff was able to work.  (Commissioner's br. at 6.)  Doing "fairly well" on medications is not the equivalent of either an ability to work or functioning appropriately. Without further clarification from Dr. Siddiqui the ALJ improperly interpreted Dr. Siddiqui's statement.

One important aspect of the Commissioners' duty to develop a fair and complete record is his duty to recontact a claimant's treating physician.  The Commissioner's regulations provide as follows:

> (e) Recontacting medical sources.  When the evidence we receive from your treating physician or psychologist or other medical source

is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e). In the present case the ALJ did not recontact Dr. Siddiqui for elaboration or clarification of his opinion expressed in the letter to plaintiff's attorney. It was therefore improper for the ALJ to interpret the letter as indicating the plaintiff was able to function appropriately on medications.

The present case bears a resemblance to the situation in <u>Wilder v. Chater</u>, 64 F.3d 355 (7th Cir. 1995). In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The <u>Wilder</u> court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the

>case, that of a psychiatrist not retained by the applicant but appointed
>by the administrative law judge himself to advise on Wilder's
>condition. . . . The psychiatrist's testimony, though conclusional (but
>then no one pressed him to elaborate the grounds for his conclusions),
>was the only direct testimony concerning the critical issue of the date
>of onset of Wilder's disabling depression.   Severe depression is not
>the blues.   It is a mental illness;  and <u>health professionals, in
>particular psychiatrists, not lawyers or judges, are the experts on it</u>.
>The question what stage a physical or mental illness had probably
>reached some years before it was first diagnosed is a medical
>question, and <u>the uncontradicted evidence of the only disinterested
>expert to opine upon it is entitled to considerable weight</u>.  We do not
>say conclusive weight;  but the facts on which the administrative law
>judge relied to contradict that evidence are singly and together
>unimpressive.

<u>Id.</u> at 337 (emphasis added)(citations omitted).  In the present case, ALJ Munford again has substituted his medical opinions for those of the Commissioner's psychological consultant.  The ALJ also had the opportunity to elicit additional medical evidence as to the plaintiff's mental impairment, but chose not to do so. <u>See</u>  <u>Jenkins v. Sullivan</u>, 906 F.2d 107, 109 (4th Cir. 1990)(noting the ALJ improperly analyzed the medical evidence himself rather than eliciting additional medical testimony from physicians).

> An ALJ is not allowed to make medical findings or indulge in
unfounded hunches about the claimant's medical condition or prospect for
improvement.  He is not free to base his decision on unstated reasons or hunches.

Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer <u>abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians</u>: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*; however, as a hearing officer <u>he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional</u>.
>
> Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. . . .
>
> Although Social Security disability benefits must be reserved only for those who qualify to receive them, <u>an ALJ may not arrogate the power to act as both judge and physician</u>. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

Although Drs. Neville and Dolce do not qualify as treating sources under the Commissioner's regulations, the ALJ is still required to consider their

10

opinions. 20 C.F.R. § 416.927(d). Because they are specialists, their opinions are entitled to more weight.[4] The thoroughness of their reports also entitle them to greater weight.[5] Rather than accepting the opinions of Drs. Nevelle and Dolce, which clearly establish disability, the ALJ "succumbed to the temptation to play doctor and make [his] own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

       This court, has often noted ALJ Munford's improper substitution of his medical opinions for those of trained medical professionals in cases involving mental illness. See eg., Jiles v. Commissioner of Social Security, 2006 WL 4402937 (N.D.Ala.)(listing six other cases in which ALJ Munford had improperly substituted his judgement for mental health care professionals and expressing the hope that such errors would not be repeated in the future). In the present case, the ALJ appears to have gone out of his way to ignore the opinion of his own consultant, Dr. Neville, the opinion of the state agency reviewing psychiatrist, and the opinion of Dr. Dolce. The cumulative impact of these opinions, which the ALJ did not properly reject, and the vocational expert's testimony is that the plaintiff

---

[4] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5)

[5] See 20 C.F.R. § 404.1527(d)(3)(well supported opinions entitled to more weight).

would be unable to perform any substantial gainful activity.  This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.

   An appropriate order will be entered contemporaneously herewith.

   DONE and ORDERED 14 October 2008.

   _____
   UNITED STATES DISTRICT JUDGE
   J. FOY GUIN, JR.